**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APR 3 0 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNTIED STATES OF AMERICA

v.                                          Cr. No. 98-329-01 (TPJ)

VINCENT HILL

           Defendant.

## DEFENDANT VINCENT HILL'S MOTION
## FOR MISTRIAL OR ALTERNATIVELY
## FOR AN EVIDENTIARY HEARING

Defendant Vincent Hill respectfully moves this court for a mistrial on the ground that he was deprived of his Sixth Amendment right to assistance of counsel when cooperating witness Eugene Byars testified to alleged jailhouse conversations he had with defendant. The record in this case establishes that Mr. Byars, while acting as a government agent, deliberately elicited statements from Mr. Hill after Mr. Hill had been indicted in this case and in the absence of his counsel.[1]

Alternatively, Mr. Hill requests and evidentiary hearing to develop additional evidence in support of this claim. In support of this motion, defendant submits the accompanying Memorandum of Law.

Respectfully submitted,

Christopher M. Davis #385582
Suite 910
601 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 234-7300

---

[1] Mr. Hill adamantly denies that he made any of the statements that Mr. Byars has attributed to him.



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNTIED STATES OF AMERICA

v.                                             Cr. No. 98-329-01 (TPJ)

VINCENT HILL

        Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT VINCENT HILL'S MOTION FOR
## MISTRIAL OR ALTERNATIVELY FOR
## AN EVIDENTIARY HEARING

        Defendant Vincent Hill, through counsel, has moved for a mistrial on the ground that

he was deprived of his Sixth Amendment right to counsel when Eugene Byars testified

about jailhouse conversations with Mr. Hill.  For the reasons explained more fully below,

those statements are inadmissible and a new trial is warranted.

## RELEVANT FACTUAL BACKGROUND

        Evidence concerning the "Southwest Investigation" was presented to the Grand

Jury and in September 1998, a 57 count indictment was returned.  The indictment alleged

that Vincent Hill and others participated in a racketeering conspiracy and a narcotic

conspiracy that operated in the K Street neighborhood of Southwest, Washington, D.C.

Numerous substantive offenses were also alleged, including the murder of Larry Wright,

aka Patcho.

        Mr. Hill was arraigned and counsel appointed by the end of September.  While

pending trial, Mr. Hill was incarcerated at the District of Columbia Jail, on the Northeast 2

unit.  In November, 1998, Eugene Byars, arrived on the same unit as Mr. Hill.   Mr. Byars

2

grew up in the same Southwest neighborhood that the K Street Crew was alleged to have been operating. He testified that he knew Mr. Hill since the early eighties, when "I walked around with him in the neighborhood." Tr. 4/9/01, p.m., pp. 97-98.

Unknown to Mr. Hill however, was that Mr. Byars was a government informant. He had provided information to the government about Mr. Hill and testified against him before the Grand Jury several months earlier. Tr. GJ 2/10/98, p. 19.

Mr. Byars became a government informant in November, 1997, after he was arrested on various drug and firearm charges. To avoid incarceration for those offenses, Mr. Byars entered into a plea agreement. In accordance with the agreement, the government dismissed several charges and did not oppose his release following a guilty plea to unlawful possession of a firearm by a convicted felon. Tr. 4/9/01, p.m., pp. 37-38; Tr. 4/10/01 a.m., p. 83. For his part, Mr. Byars met with FBI Agent Vince Lisi and prosecutors involved with the K Street case. Tr. 4/9/01, p.m., p. 54. He provided information about Vincent Hill and the other suspected members of the K Street Crew. Tr. 4/10/01, a.m., p. 11-12. Mr. Byars understood from the beginning that their focus was on individuals from K Street, Southwest. Tr. 4/10/01, p.m., pp 15-16.

Agent Vince Lisi, the case agent in the K Street Investigation, was responsible for supervising Mr. Byars. Tr. 4/11/01, p.m., pp. 17-18. They kept in contact at least two times a day. Tr. 4/11/01, p.m., p. 18; Tr. 4/10/01, p.m., pp. 25-26. Although Mr. Byars understood that as part of his agreement with the government he was "not [to] catch no charge," he returned to his drug dealing activities. Tr. 4/9/01, p.m., pp. 39-40. He was arrested in November, 1998 and incarcerated at the District of Columbia Jail in the Northeast 2 unit.

3

Because of these new charges, Mr. Byars felt especially compelled to fulfill his obligations of cooperation.  Tr. 4/10/01,.a.m., p. 12.  While at the Jail, he kept up with his plea agreement by giving authorities "information that was told to me by the defendants."[2] Tr. 4/10/01,.a.m., p. 12; Tr. 4/11/01, p.m., p. 42.

Mr. Byars spoke with Mr. Hill  "numerous times." Tr. 4/10/01a.m., p. 12.  He testified that they "talked about a lot of things."  Tr. 4/10/01, a.m., p. 37.  He explained that was possible because all the men on the unit came out at the same time and could "socialize" with each other.  Tr. 4/10/01, a.m. p. 16; 4/10/01 p.m., p. 9.  Being from Southwest and both being on the top tier of the unit, they saw each other frequently. Tr. 4/10/01, a.m., p. 16.   For one day Mr. Byars even shared a cell with Mr. Hill.  Tr. 4/9/01, p.m., p. 43.

Also with them on the top tier was Reginal Switzer, Mr. Byars' friend.  Tr. 4/9/01, p.m., p. 13.  Mr. Byars spoke to Mr. Switzer about the Patcho murder.  Tr. 4/10/01, a.m., p. 39.  Mr. Switzer, was "going through changes.  He was saying that he felt a guilty conscience" because of his involvement in the murder. Tr. 4/10/01, a.m., p. 39.  Mr. Byars testified that Mr. Switzer told him "if I had never brought 'Patcho" out of the hour, Vincent [Hill] would never have killed him."  Tr. 4/10/01, a.m., p. 37.

Mr. Byars was going back and forth between Mr. Switzer and Mr. Hill because they had "anomisity" towards each other.  Tr. 4/11/01, p.m., p. 42.  They both felt the other was "telling on" them.   As a result of these conversations, Mr. Byars, testified that Mr. Hill admitted that he killed Patcho (Tr. 4/9/01, p.m., p. 46, Tr. 4/10/01, a.m., p. 36) and that he wanted to kill Mr. Switzer.  Tr. 4/9/01, p.m., p. 43.  According to Mr. Byars, Mr. Hill also told

---

[2]  Several other K Street defendants were housed on the Northeast 2 unit when Mr. Byars was there including Reginald Switzer.  Tr. 4/9/01, p.m., p. 42.

him that  he had sent word to another cooperating witness, James Montgomery,  that "if

he don't close his mouth, he was going to get his mother killed."  *Id.* at  p. 44.

## RELEVANT LEGAL STANDARDS

An accused is denied the basic protections of the Sixth Amendment's guarantee

when the government uses his own incriminating words against him at trial, if those words

were "deliberately elicited from him after he had been indicted and in the absence of his

counsel."[3]  *Massiah v. United States*, 377 U.S. 201, 206 (1964).   Once the right has

attached the Sixth Amendment imposes on government agents an affirmative obligation

to respect and preserve the accused's choice to seek the assistance of counsel.  *United*

*States v. Lozada-Rivera*, 177 F.3d 98 (1st Cir. 1999).

The cases establish three basic requirements for finding a Sixth Amendment

violation: (1) the right to counsel must have attached at the time of the alleged

infringement; (2) the informant must have been acting as a "government agent"; and (3)

incriminating statements must have been "deliberate elicited" from the defendant.  See,

*e.g.*, *Maine v. Moulton*, 474 U.S. 159, 170-71 (1985); *United States v. Henry*, 447 U.S. 264,

269-270 (1980).  Reviewing each in turn, it is clear that Mr. Hill's Sixth Amendment right

was violated.

---

[3] See also *Patterson v. Illinois*, 487 U.S. 285 (1988); *Michigan v. Jackson*, 475 U.S.
625 (1986); *Maine v. Moulton*, 474 U.S. 159 (1985); *United States v. Henry*, 447 U.S. 264
(1980).

RIGHT TO COUNSEL HAD ATTACHED

The right to counsel attaches "at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia,* 467 U.S. 180 (1984); see also *Estelle v. Smith*, 451 U.S. 454, 469-70 (1981); *Moore v. Illinois*, 434 U.S. 220, 226(1977); *Brewer v. Williams*, 430 U.S. 387, 398 (1977); *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).

It cannot be disputed that Mr. Hill's right to counsel had attached by November, 1998, when the statements about which Mr. Byars testified were allegedly made.  Mr. Hill had been indicted and had appointed counsel by the time Mr. Byars arrived at the D.C. Jail. Under these circumstances, Mr. Hill was entitled to the full protection of the Sixth Amendment.

BYARS' STATUS AS A GOVERNMENT AGENT

Massiah applies to statements elicited by the government or someone acting on its behalf.  *Massiah v. United States*, 377 U.S. 201 (codefendant who decided to cooperate); *United States v. Henry*, 447 U.S. 264 (jailhouse informant).   In *Henry*, as here, the person who elicited the incriminating statements was an inmate at the same jail as Henry.  That inmate had a relationship with the Federal Bureau of Investigation whereby he was paid on a contingency fee basis to provide information on criminal activity.  When the inmate told a Government agent that he was in the same cellblock as several federal prisoners, including Henry, the agent told the inmate  to pay attention to statements made by these prisoners.  The inmate informant and Henry subsequently engaged in some conversations during which Henry made incriminating statements about his pending bank robbery

6

charges. *United States v. Henry*, 447 U.S. 264.

The agency issue in Henry was clear. Less clear cases are those where the government has not focused the attention of the jailhouse informant on the defendant. In those situations, several circuit courts have held that the informant was not a government agent for *Massiah* purposes. See, *United States v. LaBare*, 191 F.3d 60 (1st Cir. 1999) (although witness agreed to report on future crime related statements of fellow inmates, government did not focus informant's attention on defendant until informant has already collected information used at trial); *Moore v. United States*, 178 F.3d 994 (8th Cir. 1999) (general agency insufficient); *United States v. Birbal*, 113 F.3d 342, 346 (2d Cir. 1997)(same).

Other circuits, including this one, do not view the issue of agency so restrictive. *United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (violation where an "informant at large" elicited statements); *See also, United States v. Brink*, 39 F.3d 419, 423-24 (3d Cir. 1994); *Creel v. Johnson*, 162 F.3d 385, 393-94 (5th Cir. 1998). In *Sampol* the government did not specifically focus the informant's attention on the defendant. The government however made clear to him that would "gratefully receive" reports about any criminal activity. *United States v. Sampol*, 636 F.2d at 638. In exchange for "coming through" as an informer, the witness was to be rewarded with his freedom on probation. *Id.* The Court of Appeals characterized the witness as an "informant at large" and the government's conduct as "troll[ing] in the jail, using [the informant] as bait, ... to net any unwary inmate who rose to the lure." *Id.* at 638. Under these circumstances, the incriminating statement elicited from the defendant violated the Sixth Amendment.

Under either the *Sampol* or the more restrictive approach, Mr. Byars was an agent of the government in November, 1998. At the time he landed in the D.C. Jail with Mr. Hill, Mr. Byars was operating under an express agreement to cooperate with the government. He was under the direct and close supervision of Special Agent Lisi, the case agent for the Southwest Investigation. From this initial interview with Agent Lisi in 1997, his attention was focused on the Southwest Investigation and Vincent Hill in particular. Tr. 4/10/01, a.m., p. 11-12; Tr. 4/10/01, p.m., pp. 15-16. That agreement was subsequently reaffirmed and incorporated into another plea agreement in October, 2000, concerning his then pending charges.

Additionally, like the informant in *Henry*, Mr. Byars was to be "paid" for the services he rendered and therefore had an incentive to produce the information which he knew the FBI hoped to obtain. "Payment" was not on a contingency fee basis as in *Henry*. For *Massiah* purposes however,

> any informant who is offered money, benefits, preferential treatment or some future consideration including but not limited to, a reduction in sentence, in exchange for eliciting information is a paid informant.

*United States v. Brink*, 39 F.3d 419, 423 n. 5 (3d Cir. 1994); *See also, United States v. Sampol*, 636 F.2d at 638 (payment was "a grant of his freedom, a commodity more precious than money" ).

In accordance with his 1997 cooperation agreement, Mr. Byars was to receive consideration in the form of a request for sentencing departure for his work as an informant. That incentive became even stronger in November, 1998, when Mr. Byars acquired additional charges for which he also desired consideration. Landing in the same

8

unit at the D.C. Jail as Mr. Hill and other members of the K Street Crew, provided Mr. Byars

the opportunity to further benefit himself by doing what he was obligated to do under his

1997 plea agreement. Accordingly, at the time Mr. Hill's alleged jailhouse statements were

made, Mr. Byars was a government agent.

## DELIBERATELY ELICITED STATEMENTS

The "deliberately elicited" standard may be satisfied with more subtle government

action than direct police interrogation. For instance, in *Henry*, the Supreme found that the

government "deliberately elicited" incriminating statements from Henry despite the fact that

the jailhouse informant did not directly question Henry nor initiate conversations concerning

the charges pending against Henry. The informant in that case, did however develop a

relationship of trust and confidence with the defendant and he engaged the defendant in

conversation which successfully resulted in the defendant revealing incriminating

information. The informant, the Court held, "was not a passive listener." *United States*

*v. Henry,* 447 U.S. at 271. These actions, the court found amounted to "indirect and

surreptitious [interrogation]'" of the defendant. *Id.* at 273.

Three factors were significant to the Court's determination that the informant

deliberately elicited statements from Henry in violation of the Sixth Amendment. First, the

informant was to be paid for any information he produced and thus had an incentive to

extract inculpatory admissions from Henry. Second, Henry was unaware of the witness'

role as a Government informant. Third, Henry was in custody at the time he spoke with

the informant. *United States v. Henry,* 447 U.S. at 270-271. The Court reasoned that

"confinement may bring into play subtle influences that will make [an accused] particularly

9

susceptible to the ploys of undercover Government agents." *Id.* at 274. Recognizing that *Henry* was not a case like *Massiah* where the defendant and the informant had a prior longstanding relationship, the court noted that the Henry informant had become "more than a casual jailhouse acquaintance."

Similarly here, Mr. Hill was in custody and in close proximity to an informant who was more than a casual jailhouse acquaintance. Thus, Mr. Byars, like the informant in *Henry*, was in a position to elicit discussions of past and planned crimes.

Additionally, like the informant in *Henry*, the evidence establishes that Mr. Byars was not merely a passive listener. He actively engaged in conversations with Mr. Hill. Tr. 4/9/01, p.m., p. 43; Tr. 4/10/01, a.m., p. 12. He "mingled," "socialized", and "talked about a lot of things" with him on "numerous" occasions.

Finally,  Mr. Hill was unaware of Byars' role as a government agent.  The *Henry* court recognized that under such circumstances information may be elicited  "that an accused would not intentionally reveal to persons known to be Government agents." *United States v. Henry*, 447 U.S. at 273.

Similarly here, the statements Mr. Byars claims were made by Mr. Hill are not the type that would have intentionally been revealed to persons known to be government agents.  Mr. Byars acknowledged that,

> they didn't know that I had a plea agreement, for one, and another thing is that I ain't never had no reputation of working with no agents or nothing like that.

Tr. 4/10/01 a.m., p. 40. Indeed, Mr. Byars testified that Mr. Hill  "would never conversate with me about certain murders" if he had known. Tr. 4/10/01, a.m.,  p. 40.  Accordingly,

10

because Byars was thought of only as only another inmate from Southwest, he was in a position to elicit statements that would not be intentionally revealed to persons known to be government agents.

Considering Mr. Byars' conversations with Mr. Hill in light of these factors, the government "must have known that its agent was likely to obtain incriminating statements from the accused in the absence of counsel." *Maine v. Moulton*, 474 U.S. 159, 176 n.12. By concealing the fact that Mr. Byars was an agent of the Government, Mr. Hill was denied the opportunity to consult with counsel and was thus denied the assistance of counsel guaranteed by the Sixth Amendment. [4]

### A NEW TRIAL IS WARRANTED

The statements attributed to Mr. Hill by Mr. Byars regarding the charged Patcho murder, as well as the statements regarding the witnesses,[5] were obtained in violation of the Sixth Amendment.  The appropriate remedy for a *Massiah* violation is suppression of the statement.  *United States v. Bender,* 221 F.2d 265 (1st Cir. 2000). Ordinarily, a *Massiah* issue is raised by pretrial motion to suppress statements. *Id.*; *United States v. Hayes*, 231 F.3d 663 (9th Cir. 2000); *United States v. LaBare*, 191 F.3d 60 (1st Cir. 1999).

---

[4] Defendant alternatively requests an evidentiary hearing to develop additional facts in support of this claim.  See *United States v. Brink*, 39 F.3d 419 (reversed and remanded where District Court declined to hold an evidentiary on defendant's colorable *Massiah* claim.)

[5] *United States v. Bender,* 221 F.3d 265 (1st Cir. 2000)(defendant's statements regarding fabricating an alibi and kidnaping and murder of government witnesses were incriminating as to pending charges and therefore were rightly suppressed by the district court) *United States v. Arnold*, 106 F.3d 37 (3rd Cir. 1997)(tape recorded statements regarding witness intimidation and attempted murder of witness were "closely related" to pending charges and should have been suppressed).

11

This procedure was unavailable to Mr. Hill however because the government did not comply with its discovery obligation under Rule 16, by disclosing statements of the defendant that it intended to use at trial.  Fed.R.Crim.P. 16(a)(1)(A).  Having elected to sandbag the defense with this testimony at trial, a new trial is the only available remedy. An inadmissible "confession" to the only murder that Mr. Hill is charged with cannot be considered harmless beyond a reasonable doubt.

Respectfully submitted,

Christopher M. Davis #385582
Suite 910
601 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 234-7300
Counsel for Defendant Hill

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served by hand on this 30th day of April, 2001, to  Peter Zeidenberg and Anjali Chaturvedi, Assistant United States Attorneys, 555 4th Street, N.W., Washington, D.C.  20001 and all defense counsel of record.

Christopher Davis

12

RECEIVED

APR 3 0 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT