FILED
JUN - 5 2001
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 98-329-01-06 (TPJ) |
| | ) | |
| VINCENT HILL, aka Vito, | ) | |
| JEROME MARTIN, aka Pimp, | ) | |
| SEAN COATES, aka Birdie, | ) | |
| WILLIAM SWEENEY, aka Draper | ) | |
| SAM CARSON, aka Chin | ) | |
| | ) | |
| Defendants | | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 99-348-01 (TPJ) |
| | ) | |
| GARY PRICE, aka Harry-O | ) | |
| | ) | |
| Defendant | ) | |

GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTIONS FOR JUDGEMENT OF ACQUITTAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendants' Motions for Acquittal. In support of its opposition, the government relies on the following points:

The Murder of Curtis Edwards, OA 18; RA 27

Defendant Martin has argued that he is entitled to a Motion for Judgement of Acquittal regarding all counts that pertain to the murder of Curtis Edwards, which occurred on August 29, 1992. The government has opposed this motion, contending that FBI Special Agent Vincent Lisi testified extensively – virtually all on cross-examination by counsel for defendant Martin – regarding

the facts and circumstances of the murder of Mr. Edwards. The government now submits the following in support of this contention:

On April 11, 2001, Agent Lisi was asked, on direct examination, about whether or not a government witness in the Curtis Edwards homicide case, Douglas Eatmon, had a scar on his neck (4/11, p.m., p. 51), and whether or not, at the trial, Mr. Eatmon retracted a statement that he had previously given (4/11, p.m., p. 52). After an objection by counsel for defendant Martin, and a lengthy bench conference, the government withdrew the latter question (4/11, p.m. pp. 52 - 59). The Court told the jury to disregard the question as hearsay (4/17, a.m., p. 12).

Despite having his objection sustained, and having the Court rule that the jury should disregard the question, counsel for Martin made the tactical choice of cross-examining Agent Lisi about his knowledge concerning the murder of Curtis Edwards:

> Ms. Hepworth: Your, Honor, I believe that based on the Court's instruction to the jury and Mr. Zeidenberg's questions concerning the investigator, I should go into the questioning concerning Mr. Eatmon's testimony at the trial. I just want to make sure that the Court is not going to be offended at my going into it after –
>
> The Court: I am not going to be offended, but you may be opening the door. . . . If you are going to inquire as to whether or not the witness' testimony was consistent with his grand jury testimony at trial, that opens the door to cross-examination as to whether the witness ever gave a contrary statement to a defense investigator.

(4/17, a.m., p. 18).

The government likewise warned counsel that it risked opening the door to this testimony by persisting in this particular line of questioning:

> Mr. Zeidenberg: I completely concur with the Court's ruling and agree with it, that if she wants to inquire, I think it does elicit hearsay. We're not going to object, but I think it clearly opens the door to the same type of testimony.

(4/17, a.m., p. 19).

After a lengthy discussion at the bench, the Court once more advised counsel to proceed cautiously, saying that, "Well, I don't know how far it opens [the door], but if you want to ask it, I am not going to preclude your asking it, but you do so advisedly." (4/17, a.m., p. 22).

On cross-examination, counsel for defendant Martin proceeded to question Agent Lisi about the grand jury testimony of Douglas Eatmon, and, indeed, gave Agent Lisi a copy of Mr. Eatmon's grand jury testimony to review. (4/17, a.m., p. 25). Counsel then inquired of Agent Lisi whether or not Mr. Eatmon's trial testimony was different from his grand jury testimony. (4/17, a.m., p. 28) and whether or not Eatmon's trial testimony was "consistent with the government's theory" at trial. (4/17, a.m., p. 30, 31).

On re-direct examination, Agent Lisi was permitted to explain, over objection, what the government's theory was in the Curtis Edwards homicide case:

> At the trial, the government's case was that a tinted-window car came into the neighborhood, which caused Mr Martin and others concern because of recent drive-bys. . . . Mr. Martin became agitated that the car was there and that nobody did anything to the car and that it just drove into the area like that. Somebody asked for a gun. Mr. Martin gave them a gun, and Antonio Knight, to whom he gave the gun, went and shot the car and killed one of the people inside and injured another.

(4/17, a.m., p. 32).

Unwilling to leave bad enough alone, counsel for Martin attempted to pursue the issue further on re-cross examination:

> Q.   Agent Lisi, isn't it true that Mr. Eatmon's account of this alleged shooting was contradicted by other witnesses that did not see him present at the time?
>
> A.   It was confirmed by three other witnesses.
>
> Q.   Wasn't it contradicted by at least one witness who said that Mr.

>    Eatmon wasn't present?
>
> A. No, I think that one witness did not recall Mr. Eatmon being present, but they said that there was a large group out there. But the story was confirmed by three other witnesses.

(4/17, a.m., p. 35).

This was not the sum total of Agent Lisi's testimony regarding the murder of Curtis Edwards. On May 3, 2001, Counsel for Mr. Martin once again attempted to cross-examine Agent Lisi regarding the Curtis Edwards murder. Specifically, counsel inquired whether or not Chrishauna Gladden's grand jury testimony implicated Mr. Martin "in any way in handing a gun to Antonio Knight?" (5/3, a.m., p. 77)  Counsel then continued this line of questioning:

> Q. Chrishauna Gladden's testimony at the grand jury indicated that she saw only a car driving away from the top of the hill, isn't that right?
>
> A. No.
>
> Q. On the day of the shooting – her testimony concerning what she saw the day of the shooting concerned the car speeding down the street after another car, isn't that right?
>
> A. The day of the shooting, yes, Ma'am.
>
> Q. She had no testimony on the day of the shooting – concerning Jerome Martin on the day of the shooting?
>
> A. That's correct.

(5/3, a.m., p. 77 - 78).

Not surprisingly, the government, on re-direct, inquired of Agent Lisi how it was that Ms. Gladden's testimony did implicate defendant Martin. Again over objection, Agent Lisi responded:

> The government's theory was that Jerome Martin had incited Antonio Knight to shot the people in the car or to do something to the people in the car because they came into the area and they had tinted windows and nobody knew who it was and that he had said words to the effect, "you're going to let them come up here like that and you

> don't even know who that is?" At which point, Antonio Knight said, "somebody give me a gun." And Jerome Martin gave him a gun, and then he sped away. Antonio Knight sped away in a car with others and shot the people in the car.
>
> Chrishauna Gladden was present the next day or the day after that whenever Antonio Knight and Jerome Martin and some others were outside and that Jerome Martin was praising, for lack of a better term, Antonio Knight, saying, "Yeah, Pug got his man. Pug got his man, yeah," you know, patting him on the back like he had done something special. And then he started to berate somebody else who was there because they had never shot anybody and that they were afraid to shoot somebody.

(5/3, a.m., p.90).

Thus, for what were obviously tactical reasons, counsel for Martin repeatedly inquired of Agent Lisi about the murder of Curtis Edwards and elicited testimony from which the jury could conclude, beyond a reasonable doubt, that defendant Martin aided and abetted the murder of Curtis Edwards.

Distribution of More than 50 Grams of Crack Cocaine, Count One, paragraph 2

All of the defendants have argued that there has been no evidence adduced at trial regarding the amount of cocaine that was sold during the course of the conspiracy, so that the government's allegation in Count One that the group was responsible for the sale of over 50 grams of cocaine base should fail. The government directs counsel to the following citations in the record which would support an inference that in excess of 50 grams of cocaine base were sold:

Reginald Switzer testified that he sold cocaine for approximately a five year period in which he was selling "dime bags" of crack. (1/24/01, a.m., p. 55-56.) Switzer testified that he sometimes received the cocaine in powder form and would cook it up into crack. (1/24/01, a.m., p. 56.) Switzer testified that he purchased between 3 ounces and an eighth (of a kilogram) at a time. (1/24/01, a.m., p. 56.) Mr. Switzer also testified that he sold ounces of crack cocaine for about $1,000. (1/24/01,

a.m., p. 57.) Mr. Switzer also testified that he sold cocaine three to four days out of the week, earing between three thousand and seven thousand dollars. (1/24/01, a.m., p. 57.)

Donald Nichols also testified about cocaine sales. Nichols testified that in 1991 he discussed with defendant Martin how much Martin was paying for crack cocaine (2/15, a.m., p. 11). Nichols testified that he personally had been paying $4,000 for between five and five and a half ounces of crack, and wanted to know how much defendant Martin was paying for his own crack. (2/15, a.m., p. 11.) Defendant Martin replied that he was paying even more than was Nichols. (2/15, a.m., p. 11.) Given that there are 28 grams to an ounce, this testimony, if believed, implicates defendant Martin and, by extension, the co-defendants, in selling over one hundred grams even if defendant Martin only purchased such a quantity on a single occasion.

Andre Murray also testified about cocaine selling. On cross-examination by counsel for Sweeney, Mr. Murray testified that he and Wayne Perry were responsible for selling "massive weight" or "pounds" of cocaine base during 1989. (2/1/01, p.m., p. 12 - 13). There has been an abundance of evidence adduced at trial that Wayne Perry was a founding member of the K Street Crew.

Given this testimony, a reasonable trier-of-fact could find beyond a reasonable doubt that these defendants were responsible for distributing more than 50 grams of crack cocaine. Accordingly, the motion for judgement of acquittal on these grounds should be denied.

Respectfully Submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

*[signature]*
Peter R. Zeidenberg
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
Bar No. 440-803

*[signature]*
Anjali Chaturvedi
Assistant United States Attorney
Bar No. 446-177

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by hand upon the attorneys for the defendants as set forth below, this 6th day of June, 2001.

Steven R. Kiersh, Esq.
717 D Street, N.W.
Suite 400
Washington, D.C. 20004

Christopher M. Davis, Esq.
601 Indiana Avenue, N.W. #910
Washington, D.C. 20004

Joanne Hepworth, Esq.
305 H Street, N.W., 2nd Floor
Washington, D.C. 20001

Joseph Beshouri, Esq.
307 G Street, N.W.
Washington, D.C. 20001

Lexi Negin-Christ
Suite 201
419 Seventh Street, N.W.
Washington, D.C. 20004

Frederick Jones, Esq.
901 6th Street, S.W., #409
Washington, D.C. 20024

Jonathan Zucker, Esq.
601 Indiana Avenue, N.W.
Suite 910
Washington, D.C. 20004

Peter R. Zeidenberg
Assistant United States Attorney